**IN THE UNITED STATES
BANKRUPTCY COURT FOR THE WESTERN
DISTRICT OF TENNESSEE WESTERN DIVISION**

---

**IN RE: GREATER PRAISE TABERNACLE COGIC
d/b/a GREATER PRAISE CATHEDRAL COGIC,**

|  |  |
|---|---|
|  | **CASE NO. 07-20579** |
|  | **CHAPTER 11** |
| **Debtor(s).** |  |

---

**DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF REORGANIZATION
OF DEBTOR GREATER PRAISE TABERNACLE COGIC**

---

/s/ John E. Dunlap
John E. Dunlap
1433 Poplar Ave.
Memphis, TN 38104
(901) 276-3334
Fax (901) 276-4715
jdunlap00@gmail.com

# TABLE OF CONTENTS

Page

I.    PREFATORY STATEMENT AND DEFINITIONS. . . . . . . . . . . . . . .    5

II.    INTRODUCTION AND OVERVIEW…………………….. . . . . . . . .    5

A.  Introduction…………….. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

B.  Disclaimers……………………. . . . . . . . . . . . . . . . . . . . . . . . .    6

C.  An Overview of the Chapter 11 Process. . . . . . . . . . . . . . . . . . . . .    9

D.  Plan Overview ………………………………………………    10

E.  Voting on the Plan…………………………………………..    10

1.    Who May Vote……………………………………    10
2.    How To Vote……………………………………..    11

F.  Confirmation of the Plan………………………………………    11

1.    Generally………………………………………...    11
2.    Objections to Confirmation……………………….…..    12

III.    HISTORY, ORGANIZATION AND ACTIVITIES OF THE DEBTOR.    12

A.  Preliminary Statement………………………….. . . . . . . . . . . .    12

B.  Description of the Debtor……………………………………….    13

1.    Generally…………………………………………..    13
2.    Debtor's Assets and Liability………………………….    14

A.    Assets………………………………………….    14

a.    Real Estate…………………………….    14
b.    Tangible Assets……………………..    14

1.    Cash…………………………….    15
2.    Security Deposits…………………….    15
3.    Office Equipment…………………….    15
4.    Church Organ & Musical Instr……...    15
5.    Video Equipment & Sound System..    15
6.    Vehicles…………………………...    15

7.      Miscellaneous Items………………..      16

B.      Liabilities…………………………………………      16

3.      Regular Income…………………………………………….      16

Post-Petition Income………………………………………..      17

4.      Organizational Structure……………………………………      17

5.      Management…………………………………………………..      17

IV.    THE REORGANIZATION CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      17

A. Events Leading to the Commencement of the Debtor's Bank  . . . .      17

1.      Purchase of Cathedral ……………………………………….      17
2.      Reduction in Force…………………………………………      18
3.      Greater Praise Tabernacle COGIC's Liquidation Crisis… .      18
4.      Negotiations with Pre-petition Lenders…………………….      18

B.  The Commencement of the Chapter 11 Case. . . . . . . . . . . . . . . . . .      19

C.  Claims Process and Bar Dates………………………………………….      19

D.  Filing of Statements and Schedules…………………………………….      19

F.  Bar Date for Filing Proofs of Claim…………………………………….      19

V.    DESCRIPTION OF THE PLAN………………………………………….      20

VI.    SUMMARY OF PLAN OF REORGANIZATION……………………….      20

A.  Classification of Claims and Interests…………………………………..      20

Class 1: Administrative Expense Claims…………………………….      20
Class 2:  Pre-petition Secured Claim of First Assembly of God
Financial Services…………………………………….      21
Class 3:  Pre-petition Secured Claim of Konica Minolta Business
Solutions…………………………………………..      21
Class 4:  Unsecured Claims of Gov't. Entities Entitled to Priority
Under the Code…………………………………………      21
Class 5:  Unsecured Claims of Creditors Not Entitled to Priority
Under the Code…………………………………………      21

B.  Treatment of Classes of Claims and Interests…………………………..      21

Class 1……………………………………………………....    21

Class 2……………………………………………………    22

Class 3……………………………………………………    22

Class 4……………………………………………………    22

Class 5……………………………………………………    22

C. Means for Implementation of the Plan…………………………    22

1.    Membership Contributions…………………………………    22

2.    Elimination of Employees…………………………………..    23

D. Insurance Contracts………………………………………………..    23

E. Cramdown……………………………………………………    23

VII.    ACCEPTANCE OR REJECTION OF PLAN…………………………..    23

A. Classes Entitled and Not Entitled to Vote…………………………….    23

B. Nonconsensual Confirmation…………………………………………    23

VIII.    STATUS OF CASE………………………………………………    24

IX.    BEST INTEREST OF CREDITORS TEST………………………………..    24

A. Chapter 7…………………………………………………………..    24

B. Liquidation Analysis……………………………………………    25

X.    EFFECTIVE DATE………………………………………………...    27

XI.    MISCELLANEOUS PROVISIONS…………………………………….    27

A. Payment of Statutory Fees……………………………………………    27

B. Co-debtor Stay………………………………………………    28

XII.    OTHER DETAILS………………………………………………    28

A. Headings of Articles and Sections…………………………………    28

B. Successors and Assigns…………………………………………….    29

XIII.    CONFIRMATION REQUEST…………………………………………    29

## I.
## PREFATORY STATEMENT AND DEFINITIONS

The debtor and debtor in possession in the above-captioned case under chapter 11

of title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy Code"),

submits this disclosure statement (the "Disclosure Statement") in support of the

Reorganization Plan of Debtor Greater Praise Tabernacle COGIC (the "Plan").  The

definitions contained in the Bankruptcy Code are incorporated herein by this reference,

provided that the definitions set forth in Article II to the Plan shall apply to capitalized

terms used herein.

## II.
## INTRODUCTION AND OVERVIEW

A.    Introduction

On January 18, 2007 (the "Petition Date"), the debtor commenced the above-

referenced bankruptcy case (the "Chapter 11 Case") by filing a voluntary petition under

Chapter 11 of the Bankruptcy Code.  The debtor is referred to herein as the "Debtor",

"Greater Praise Tabernacle COGIC".  On February 18 2007, the Corporate Charter was

reinstated.

This Disclosure Statement, submitted in accordance with section 1125 of the

Bankruptcy Code, contains information regarding the Plan proposed by the Debtor.  A

copy of the Plan accompanies this Disclosure Statement.  The Disclosure Statement is

being distributed to you for the purpose of enabling you to make an informed judgment

about the Plan.

The Disclosure Statement describes the Plan and contains information concerning,

among other matters:  (1) the history, business, results of operations, management,

properties and liabilities of and pending litigation of and against the debtor and (2) the

assets available for distribution under the Plan.  The Debtor strongly urges you to review

carefully the contents of this Disclosure Statement and the Plan (including the exhibits to

each) before making a decision to accept or reject a Plan.  Particular attention should be

paid to the provisions affecting or impairing your rights as a Creditor.

This Disclosure Statement contains sufficient information to enable a hypothetical

reasonable investor, typical of Holders of Claims or Interests receiving this Disclosure

Statement, to make an informed judgment about the Plan.  Under section 1125 of the

Bankruptcy Code, this approval enabled the Debtor to send you this Disclosure Statement

and solicit your acceptance of the Plan; however, the Bankruptcy Court has not passed on

the Plan itself or conducted a detailed investigation into the contents of this Disclosure

Statement.

Your vote on the Plan is important.  Absent acceptance of the Plan, there may be

protracted delays, a Chapter 7 liquidation, or the confirmation of another plan.  These

alternatives may not provide for distribution of as much value to Holders of Allowed

Claims as does the Plan.

B.      Disclaimers

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY

BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE DEBTOR'S

PROPOSED PLAN.  PLEASE READ THIS DOCUMENT WITH CARE.  THE

PURPOSE OF THE DISCLOSURE STATEMENT IS TO PROVIDE "ADEQUATE

INFORMATION" OF A KIND, AND IN SUFFICIENT DETAIL, AS FAR AS IS

REASONABLY PRACTICABLE IN LIGHT OF THE NATURE AN DHISTORY OF

THE DEBTOR AND THE CONDITION OF THE DEBTOR'S BOOKS AND RECORDS, THAT WOULD ENABLE A HYPOTHETICAL REASONABLE INVESTOR TYPICAL OF HOLDERS OF CLAIMS OR INTERESTS OF THE RELEVANT CLASS TO MAKE AN INFORMED JUDGMENT CONCERNING THE PLAN.  See 11 U.S.C. §1125(a).

FOR THE CONVENIENCE OF CERDITORS, THIS DISCLOSURE STATEMENT SUMMARIZES THE THERMS OF THE PLAN, BUT THE PLAN ITSELF QUALIFIES ANY SUMMARY.  IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING.

**THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN RELATED DOCUMENTS, CERTAIN EVENTS, AND CERTAIN FINANCIAL INFORMATION.  WHILE THE DEBTORS BELIEVE THAT THE PLAN AND REALTED DOCUMENTS SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUATORY PROVISIONS.  EXEPT AS OTHERWISE SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY A REVIEW OF THE CERTAIN PARTS OF THE RECORD IN THE CASE AND BY CERTAIN PERSONS HAVING A FAMILIARITY WITH THE DEBTOR'S BUSINESS.  CERTAIN OF THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN**

**SUBJECT TO AN AUDIT.  NEITHER THE DEBTOR NOR COUNSEL FOR THE**

**DEBTORS ARE ABLE TO WARRANT OR REPRESENT THAT THE**

**INFORMATION CONTAINED HEREIN, INCLUDING THE FINANCIAL**

**INFORMATION, IS WITHOUT ANY INACCURACY OR OMISSION.**

As a Creditor or interest holder, your vote is important.  The Plan can be

confirmed by the Court if it is accepted by the holders of two-thirds (2/3) in the amount

and more than one-half (1/2) in number of claims in each impaired Class of claims or

interests voting on the Plan.  Under certain circumstances more fully described in 11

U.S.C. §1129(b), the Court may confirm a plan notwithstanding the rejection thereof by

more than one-third (1/3) in amount and one-half (1/2) in number of the creditors voting

on the plan in any given class.  The Debtor intends to seek confirmation under 11 U.S.C.

§1129(b) in the event any class of creditors rejects the Plan.

The purpose of this statement is to provide the holders of claims against or

interests in the Debtor with adequate information about the Debtor and the Plan to make

an informed judgment when voting the Plan.

REGISTERED UNDER THE SEDURITIES ACT OF 1933, AS AMENDED (THE

"SECURITIES ACT"), OR APPLICABLE STATE SECURITIES LAWS.  NEITHER

THE SEC NOR ANY STATE REGULATORY AUTHORITY HAS PASSED UPON

THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT, THE

EXHIBITS HERETO OR THE STATEMENTS CONTAINED HEREIN.

THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE

CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE.  EACH CREDITOR OR

INTEREST HOLDER SHOULD CONSULT HIS OR HER OWN LEGAL COUNSEL

AND ACCOUNTANT AS TO LEGAL, TAX AND OTHER MATTERS

CONCERNING HIS OR HER CLAIM.

C.      An Overview of the Chapter 11 Process

Chapter 11 of the Bankruptcy Code contains numerous provisions, the general
effect of which is to provide the debtor with "breathing space" within which to propose a
restructuring of its obligations to third parties.  The filing of a Chapter 11 bankruptcy
petition creates a bankruptcy "estate" comprising all of the property interests of the
debtor.  Unless a trustee is appointed by the Bankruptcy Court for cause (no trustee has
been appointed in this Chapter 11 Case), a debtor remains in possession and control of all
its assets as a "debtor in possession."  The debtor may continue to operate its business in
the ordinary course on a day-to-day basis without Bankruptcy Court approval.
Bankruptcy Court approval is only required for various enumerated kinds of transactions
(such as certain financing transaction) and transactions out of the ordinary course of a
debtor's business.  The filing of the bankruptcy petition gives rise to what is know as the
"automatic stay" which, generally, enjoins creditors from taking any action to collect or
recover obligations owed by a debtor prior to the commencement of a Chapter 11 case.
The Bankruptcy Court can grant relief from the automatic stay under certain specified
conditions or for cause.

The Bankruptcy Code authorizes the creation of one or more official committees
to protect the interests of some or all creditors or interest holders.  The fees and expenses
of counsel and other professionals employed by such official committees and approved
by the Bankruptcy Court are generally borne by a bankruptcy estate.

A Chapter 11 debtor emerges from bankruptcy by successfully confirming a plan of reorganization.  Alternatively, the assets of a debtor may be sold and the proceeds distributed to creditors through a plan of liquidation.  A plan may be either consensual or non-consensual and provide, among other things, for the treatment of the claims of creditors and interests of shareholders and holder of options or warrants.  The provisions of the Debtor's Plan are summarized below.

D.      Plan Overview

The following is a brief overview of the material provisions of the Plan and is qualified in its entirety by reference to the full text of the Plan.  The Plan is a plan of reorganization and provides for the distribution of the proceeds from the Debtor's income from operation of its business.

The Plan provides for the classification and treatment of Claims against and Interests in the Debtor.  The Plan designates Four (4) Classes of Claims.  These classes and Plan treatments take into account the differing nature and priority under the Bankruptcy Code of the various Claims and Interests.

E.      Voting on the Plan

1.      Who May Vote

The Plan divides Allowed Claims and Interests into multiple Classes.  Under the Bankruptcy code, only Classes that are "impaired' by the Plan are entitled to vote (unless the Class receives no compensation or payment, in which event the Class is conclusively deemed not to have accepted the Plan).  A Class is impaired if legal, equitable or contractual rights attaching to the Claims or Interests of the Class are modified, other than by curing defaults and reinstating maturities.  Under the Plan, Administrative Claims

10

are unclassified and are not entitled to vote.  Classes 2 will not be effected and is deemed

to have accepted the Plan.  3 and 4 are impaired and are entitled to vote.  Accordingly,

only Classes 2, 3 and 4 are impaired and entitled to vote to accept or reject the Plan.

>2.      <u>How To Vote</u>

All votes to accept or to reject the Plan must be cast by using the appropriate form

of Ballot.  No votes other than ones using such Ballots will be counted except to the

extent ordered otherwise by the Bankruptcy Court.  A form of Ballot will be provided to

Creditors in Classes 2 through 5 by which Creditors in such Classes may vote their

acceptance or rejection of the Plan.  The Ballot for voting on the plan gives Holders of

Class 2 and 6 Claims one important choice to make with respect to the Plan - you can

vote <u>for</u> or <u>against</u> this Plan.  To vote on the Plan, after carefully reviewing the Plan and

this Disclosure Statement.

**IN ORDER TO BE COUNTED, BALLOTS MUST BE COMPLETED,**

**SIGNED AND RECEIVED BY THE DEBTOR'S BALLOTING AGENT, JOHN E.**

**DUNLAP.**

IF YOUR BALLOT IS NOT PROPERLY COMPLETED, SIGNED AND

RECEIVED AS DESCRIBED, IT WILL NOT BE COUNTED.  IF YOUR BALLOT IS

DAMAGED OR LOST, YOU MAY REQUEST A REPLACEMENT BY MAKING A

WRITTEN REQUEST TO THE ADDRESS SHOWN ABOVE.

F.      <u>Confirmation of the Plan</u>

>1.      <u>Generally</u>

"Confirmation" is the technical term for the Bankruptcy Court's approval of a

plan of reorganization.  The timing, standards and factors considered by the Bankruptcy

Court in deciding whether to confirm a plan of reorganization are discussed in Article X below.

      2.    <u>Objections to Confirmation</u>

Any objections to Confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on counsel for Debtor, and the United States Trustee on or before the date set forth in the notice of the Confirmation Hearing sent to you with this Disclosure Statement and the Plan.  Bankruptcy Rule 3007 governs the form of any such objection.

Counsel on whom objections must be served are:

John E. Dunlap
1433 Poplar Avenue
Memphis, TN 38104

Karen Dennis
200 Jefferson Avenue
Suite 400
Memphis, TN 38103

**III.**
**HISTORY, ORGANIZATION AND ACTIVITIES OF THE DEBTOR**

A.    <u>Preliminary Statement</u>

The Greater Praise Tabernacle COGIC is a non-profit corporation organized under the laws of The State of Tennessee.  The Debtor was incorporated on March 3, 2005 (Corporate Charter.  Exhibit #1) as a religious corporation.  The corporation is located at 3282 North Millington Road, Memphis, Shelby County, Tennessee 38127. The Debtor is a member of the COGIC denomination.

The Debtor commenced this Chapter 11 case on January 18, 2007 in order to provide a platform for the preservation of its real property and to explore strategic

alternatives for its continued existence.  As discussed further below, based on a decline in

the Debtor's liquidity, the inability to obtain financing outside of a Chapter 11 proceeding

and a foreclosure, the Trustees of the Debtor determined that a Chapter 11 reorganization

would be the best vehicle for preserving the Church's assets and maximizing value for

the creditors.

Before commencement of the Chapter 11 case, the Trustees began to explore

strategic transactional alternatives in the form of new financing.  To that end, the Debtor

contacted several loan officers referred to them through the COGIC headquarters.  None

of the loan officers were able to offer assistance.

On December 6, 2006, Assemblies of God Financial Service Group instituted

foreclosure proceedings against the Debtor's property known as 3282 North Millington

Road, Memphis, Shelby County, Tennessee 38127.

The Plan described by this Disclosure Statement is the mechanism by which the

Greater Praise Tabernacle COGIC shall retain the Church building and repay creditors a

dividend of one hundred percent (100%).

B.    Description of the Debtor

1.    Generally

The Debtor is a member of the COGIC Church organized as a non-profit

corporation under the laws of the State of Tennessee. (Charter of Greater Praise

Tabernacle COGIC  Exhibit #4).  The Debtor was formed in March 2005 in Memphis,

Shelby County, Tennessee.  In March 2005, the Debtor purchased real property known as

3282 Millington Road, Memphis, Shelby County, Tennessee 38127 from the Frayser

Assembly of God for two hundred eighty three thousand dollars ($283,000.00).  The

Debtor has operated at this address since 2005.

2.      Debtors Assets and Liability

The Debtor's assets consist primarily of real estate located at 3282 Millington

Road, Memphis, Shelby County, Tennessee 38127.  The Debtor utilizes the premises as a

house of worship.  (Photograph of building. Exhibit #8).

A.      Assets

a.      Real Estate

The Debtor owns real estate located at 3282 Millington Road, Memphis,

Shelby County, Tennessee 38127.  The legal description is:

> Beginning at a point in the east line of Millington Road,
> said point being 267.5 feet southwardly from the south line
> of Frayser Boulevard (80 feet wide); thence South 89
> degrees 27 minutes 23seconds East a distance of 347.00
> feet to a point; thence South 01 degrees 46 minutes 19
> seconds East a distance of 111.63 feet to a point; thence
> South 87 degrees 32 minutes 11 seconds East a distance of
> 708.71 feet to a point in the northwest line of IC and G
> Railroad right of way; thence along said northwest line,
> South 33 degrees 48 minutes 22 seconds West a distance of
> 209.48 feet to a point; thence North 87 degrees 32 minutes
> 11 seconds West a distance of 944.55 feet to appoint in
> Millington Road, thence North 01 degrees 46 minutes 19
> seconds East a distance of 278.92 feet to the point of
> beginning.

The assessed value is $283,000.00 according to the Trustees.  First

Assembly of God Financial Services, Loan number 0004820, holds a perfected Deed of

Trust on the real property in the amount of $280,000.00 plus foreclosure costs and

attorney fees.

b.      Tangible Assets

1.    <u>Cash</u>

At the time of filing the Debtor held $9,862.00 in a business checking account at Bank of America.  Four thousand five hundred dollars ($4,500.00) are being held in the escrow account of the Law Office of John E. Dunlap for attorney fees and expenses.

2.    <u>Security Deposits</u>

MLG&W holds two thousand dollars ($2,000.00) as a security deposit for utility services.

3.    <u>Office Equipment</u>

The Debtor owns office equipment and furniture valued at three thousand four hundred dollars ($3,400.00).  Konica Minolta Business Solutions holds a lease on the 250 copy machine in the amount of two hundred dollars ($200.00) a month.

4.    <u>Church Organ and Musical Instruments</u>

The Debtor owns a Church Organ and a key board and a drum set and a bass guitar valued at seven thousand four hundred dollars ($7,400.00).  There are no liens on these instruments.

5.    <u>Video Equipment and Sound System</u>

The Debtor owns cameras, video equipment and a PA sound system valued at twelve thousand seven hundred dollars ($12,700.00).  There are no liens on this equipment.

6.    <u>Vehicles</u>

The Debtor owns a 1992 Ford Club Wagon valued at two thousand dollars ($2,000.00).  There are no liens on this vehicle.

7.      Miscellaneous Items

The Debtor owns hymnal books, choir robes, art work, religious icons and Church pews valued at eleven thousand two hundred dollars ($11,200.00).  There are no liens on this property.

B.      Liabilities

The Debtor's liabilities are categorized and prioritized as:

(a) Administrative Expense Claims; (b) Pre-petition secured claims; (c) Pre-petition non-priority unsecured claims; and the Debtor has ascribed the following values to those categories of liabilities:

| | |
|---|---|
| (a) Administrative Expense Claims | $8,000.00 |
| (b) Pre-petition Secured Claims | $283,000.00 |
| (c) Pre-petition Non-priority Unsecured Claims | $10,263.00 |
| (d) Claims to be Objected to | $000.00 |
| **TOTAL:** | **$301,263.00** |

3.      Regular Income

The Debtor's gross income from January 1, 2007 until January 31 2007 was $8,748.00.  The total expenses during this period of time were $8,138.45.  This includes the $5,000.00 paid to file the Chapter 11 Bankruptcy.  The Debtor's total revenue in 2004 was $74,811.70 while expenses were $57,046.42 (Balance Sheet 2004. Exhibit #11).

The Debtors total revenue in 2005 was $87,727.61 while the expenses were $97,794.38.

The Debtors total revenue in 2006 was $46,517.00 while the expenses were $67,899.03.  (Balance Sheet 2005 and 2006. Exhibit #12).

**<u>Post-Petition Income</u>**

The Debtor, by and through its accountant and lawyer, has filed monthly

operating reports in a timely manner.  These reports reflect:

January 1, 2007 – January 31, 2007 Income: $8,748.00

Post-petition expenses have been $8,138.45.  A projected income and expenses

statement has been attached to reflect projected income and expenses through December

2007.

4.      <u>Organizational Structure</u>

The Greater Praise Tabernacle COGIC is a non-profit corporation organized

under the laws of the State of Tennessee.  The Debtor is affiliated with the COGIC

Church.  There are one hundred (100) active members and approximately one hundred

and fifty (150) other members who are not particularly active.

5.      <u>Management</u>

The Debtor is governed by a Board of Trustees.  There are five (5) members of

the board who are nominated by the Pastor and elected by the entire congregation.  All

major decisions affecting the Church must be approved by a two-thirds (2/3) majority of

the board.

**IV.**
**<u>THE REORGANIZATION CASE</u>**

A.      <u>Events Leading to the Commencement of the Debtor's Bankruptcy Case</u>

1.      <u>Purchase of Cathederal</u>

In March 2005, the Trustees of the Debtor elected to purchase the building located

at 3282 Millington Road, Memphis, Shelby County, Tennessee 38127.  The Trustee's felt

the purchase was necessary to increase membership and retain a viable presence in the

Frayser/Memphis area.  On March 3, 2007, the Debtor incurred a loan in the amount of two hundred eighty three thousand dollars ($283,000.00) from Assembly of God Financial Services Group which was secured by a Deed of Trust on the sanctuary.

Unfortunately, inappropriate planning and cost analysis and necessary repairs resulted in many unanticipated expenses.  Anticipated revenue increases failed to materialize because numerous members moved out of the Shelby County area.

2.     <u>Reduction in Force</u>

Greater Praise Tabernacle COGIC has eliminated all salaried positions except the musician.  The musician receives a 1099 with no withholdings.  The Board of trustee's anticipated this action would result in annual savings of thirty thousand dollars ($30,000.00.).

3.     <u>Greater Praise Tabernacle COGIC's Liquidation Crisis</u>

In December 2006, First Assembly of God Financial Services instituted foreclosure proceedings.  Said foreclosure was scheduled for January 22, 2007.  (Baker Donnellson Correspondence. Exhibit #13).

4.     <u>Negotiations with Pre-petition Lenders</u>

By the closing months of 2006, Greater Praise Tabernacle COGIC's liquidity crisis and eroding relationship with First Assembly of God Financial Services, threatened the Church's ability to retain its building and continue its ministry.  Accordingly, the Board of trustees began to actively explore strategic transactional alternatives in the form of new financing.  To that end, the Debtor contacted the COGIC Headquarters to meet with lenders potentially interested in replacing First Assembly of God Financial Services with more favorable lending terms.

18

B.      The Commencement of the Chapter 11 Case

In order to provide a more stable balance sheet and to stay a pending foreclosure by First Assembly of God Financial Services, on January 18, 2007, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Untied States Bankruptcy Court for the Western District of Tennessee, Memphis Division.  Since the Petition Date, no trustee has been appointed in the Chapter 11 case and the Debtor has continued to operate as a Debtor-in-Possession subject to the supervision of the United States Trustee in accordance with the Bankruptcy Code. (Resolution of Trustees. Exhibit #15).

C.      Claims Process and Bar Dates

In Chapter 11 cases under the Bankruptcy Code, pre-petition claims against a debtor are generally established either as a result of being listed in the Debtor's schedules of liabilities or through assertion by the creditor in a timely filed proof of claim.  Claims asserted by creditors are either allowed or disallowed.  If Allowed, the Claim will be recognized and treated pursuant to the Plan.  If Disallowed, the creditor will have no right to obtain any recovery on or to otherwise enforce the Claim against the Debtor.  Post-petition (administrative) claims are asserted by the filing of a request for payment.

D.      Filing of Statements and Schedules

On January 18, 2007, the Debtor filed with the Bankruptcy Court Schedules of Assets and Liabilities and Statements of Financial Affairs, which set forth inter alia scheduled pre-petition claims against the Debtor based on its books and records.

E.      Bar Date for Filing Proofs of Claim

The Bar Date for filing Proofs of Claims is May 13, 2007.

**V.**

**DESCRIPTION OF THE PLAN**

A DISCUSSION OF THE PRINCIPAL PROVISIONS OF THE PLAN AS

THEY RELATE TO THE TREATMENT OF CLASSES OF ALLOWED CLAIMS

AND INTERESTS IS SET FORTH BELOW.  THE SICUSSION OF THE PLAN THAT

FOLLOWS CONSTITUTES A SUMMARY ONLY, AND SHOULD NOT BE RELIED

UPON FOR VOTING PURPOSES.  YOU ARE URGED TO READ THE PLAN IN

FULL IN EVALUATING WHETHER TO ACCEPT OR REJECT DEBTOR'S

PROPOSED PLAN OF REORGANIZATION.  IF ANY INCONSISTENCY EXISTS

BETWEEN THIS SUMMARY AND THE PLAN, THE TERMS OF THE PLAN

CONTROL.  ALL CAPITALIZED TERMS NOT OTHERWISE DEFINED HAVE THE

MEANINGS ASCRIBED TO THEM IN THE PLAN.

**VI.**

**SUMMARY OF PLAN OF REORGANIZATION**

The Debtors proposed Plan provides for payment in full of all administrative

expenses.  The pre-petition secured claims will be repaid in full in the amount of the

allowed §506(a) secured claims with interest.  The Debtor believes that the interests of

creditors will be best served if the proposed Plan is approved and payments are made in

accordance with the Plan.

A.      Classification of Claims and Interests

Pursuant to 11 U.S.C. §1122(a) and 1123(a)(1) the Plan divides claims against

and interests in the Debtor into the following classes:

Class 1: Administrative Expense Claims

Consists of unpaid professional fees and expenses, creditors holding reclamation

claims and other creditors who file requests for allowance of administrative expense claims.

> ### Class 2: Pre-petition Secured Claim of First Assembly of God Financial Services

Consists of the claim of First Assembly of God Financial Services secured by a Deed of Trust on the   real property known as 3282 Millington Road, Memphis, Shelby County, Tennessee 38127.

> ### Class 3: Pre-petition Secured Claim of Konica Minolta Business Solutions

Consists of the claim of Konica Minolta Business Solutions which is leasing a copy machine and fax-copier.

> ### Class 4: Unsecured Claims of Government Entities Entitled to Priority Under the Code

Consists of the proof of claim filed by the Shelby County Trustee and the Internal Revenue Service.

> ### Class 5: Unsecured Claims of Creditors Not Entitled to Priority Under the Code

Consists of claims of all creditors of the debtor excluding those in Class 1 through Class 3.

B.    Treatment of Classes of Claims and Interests

Class 1:        Allowed Class 1 claims shall be paid in cash, in full on the Effective date of the Plan.  Any administrative claims representing liabilities incurred in the ordinary course of business of the Debtor may be paid in cash in the ordinary course of business.  Included in this Class are the attorney fees incurred by the Debtor.  An Application for attorney fees and expenses shall be filed by the attorney for the Debtor. It is anticipated that the administrative fees will not exceed seven thousand dollars

($7,000.00).  Furthermore, any U.S. Trustee Quarterly fees under 28 U.S.C. §1930(a)(6) due and owing or assessable prior to confirmation shall be paid in full on the Effective date of the Plan and any further such fees shall be paid in accordance with 28 U.S.C. §1930(a)(6).  After confirmation, the debtor shall file with the Court and serve on the U.S. Trustee a final report for each quarter for which the case remains open in a format prescribed by the United States Trustee.

Class 2:        First Assembly of God Financial Services is owed two hundred eighty-three thousand dollars ($283,000.00) including attorney fees and costs.  The Debtor has been making adequate protection payments in the amount of $1,000.00 since March 2007.  The Plan shall treat this claim as fully secured at six percent interest and a monthly payment of $1,800.00.

Class 3:        Konica Minolta Business Solutions holds a lease on office equipment.  The Debtor will accept the lease and continue paying the $218.50 a month

Class 4:        City of Memphis and Internal Revenue Service filed a proof of claim in this case.  The Debtor has filed objections to these proof of claims.

Class 5:        There is one creditor in this class totaling ten thousand six hundred two dollars and fifty cents ($10,602.50).  The Debtor grants relief as to the co-debtor and will not pay this claim in the Plan.

C.    Means for Implementation of the Plan

1.        Membership Contributions.  The Trustees have implemented plans to increase the membership.  Many members have pledged to pay ten percent of their net income to the Debtor's budget for the fiscal year of 2007 and 2008.

2.      Elimination of Employees.  The Debtor has eliminated all salaried

positions except the musician.  Moreover, the musician has taken a reduction in his pay

D.      <u>Insurance Contracts</u>

The Debtor shall assume all contracts for insurance providing coverage for

property damage loss, fire and general liability for operation of the Debtor's business.

All insurance information has been provided to Percy Baker, the C.P.A. for the U.S.

Trustee.

E.      <u>Cramdown</u>

The Debtor, as a proponent of this Plan of Reorganization, hereby requests the

Court to find that the provisions of this Plan are fair and equitable treatment with respect

to any class that is impaired under this Plan and will not accept the Plan and that the

Court confirm this Plan notwithstanding the requirements of 11 U.S.C. §1129(a)(8) as to

such class.

## VII.
## <u>ACCEPTANCE OR REJECTION OF PLAN</u>

A.      <u>Classes Entitled and Not Entitled to Vote</u>

Classes 2, 3 4 and 5 are impaired and Holders of Claims in such Classes shall be

entitled to vote to accept or reject the Plan.

Class 1 is unimpaired.  Holders of Claims in such classes are conclusively

presumed pursuant to §1126(f) of the Bankruptcy Code to have accepted the Plan and

therefore shall <u>not</u> be entitled to vote to accept or reject the Plan.

B.      <u>Nonconsensual Confirmation</u>

In the event that any Class of Claims or Interests fails to accept the Plan as

required by §1129(a) of the Bankruptcy Code, the Debtor will request the Bankruptcy

Court to confirm the Plan in accordance with §1129(b) of the Bankruptcy Code.  Without

limiting the foregoing, in the event that any Class of claims or interest fails to accept the

Plan as is required by §1129(a) of the Bankruptcy Code, the Plan may be amended in

accordance with the Plan.

## VIII.
## STATUS OF CASE

This Chapter 11 is a method of dealing with mortgage arrearages on the Debtor's

real property.  The Disclosure Statement reveals that the Debtor's creditors will receive

more in a Chapter 11 reorganization than under a Chapter 7.  The Chapter 11 was filed on

June 29, 2005.  The meeting with the C.P.A. for the United States Trustee has been

conducted, monthly operating reports are current, and the §341 meeting of creditors was

conducted on February 12, 2007.

## IX.
## BEST INTEREST OF CREDITORS TEST

Confirmation requires, among other things, that each holder of a claim in an

impaired class and each holder of an interest either: (a) accepts the Plan; or (b) receives

or retains under the Plan property of a value, as of the Effective Date, that is not less than

the value such holder would receive or retain if the Debtor were liquidated under Chapter

7 of the Bankruptcy Code.  This requirement is commonly referred to as the "Best

Interests Test."

A.      <u>Chapter 7</u>

To determine the value that the holders of impaired claims and interests would

receive if the Debtor were liquidated, the Bankruptcy Court must determine the dollar

amount that would be generated from the liquidation of the debtor's assets and properties

in the context of a Chapter 7 liquidation case.  Bankruptcy Code §704 requires a Chapter 7 Trustee to collect and reduce to money the property of the estate as expeditiously as is compatible with the best interests of the parties in interest.

The Cash available for satisfaction of Allowed Claims would consist of the proceeds resulting form the disposition of the Debtor's assets, augmented by the Cash, if an, held by the Debtor at the time of the commencement of the Chapter 7 case.  Any such Cash amount would then be reduced by the amount of any claims secured by such assets, the costs and expenses of the liquidation and such additional administrative claims and other priority claims that may result from the use of Chapter 7 for the purposes of liquidation.

The costs of liquidation under Chapter 7 would include fees payable to a Trustee in bankruptcy, as well as those that might be payable to his or her attorneys and to other professionals that such trustee may engage, plus any unpaid expenses incurred by the Debtor during the Chapter 11 Case that would be allowed in the Chapter 7 Case, such as compensation for attorneys, appraisers, accountants or other professionals and costs and expenses of the Debtor and the Committee.  Such administrative claims would have to be paid in Cash, in full from the liquidation proceeds before the balance of those proceeds could be made available to pay other Claims.

B.    Liquidation Analysis

Pursuant to Bankruptcy Code §1129(a)(7), unless there is unanimous acceptance of the Plan by an impaired Class, the Debtor must demonstrate, and the Bankruptcy Court must determine that with respect to such Class, each holder of a Claim will receive property of a value, as of the Effective Date of the Plan, that is not less than the amount

that such holder would receive if the Debtors were liquidated under Chapter 7 of the

Bankruptcy code on the Effective Date of the Plan.  This requirement is commonly

referred to as the "Best Interests of Creditors Test."  For the reasons set forth in the

following paragraph, the Debtor believes that the Plan satisfies the Best Interests of

Creditors Test.

In a Chapter 7 liquidation, holder of Allowed Claims would receive distributions

based on the liquidation of the non-exempt assets of the Debtor.  Such assets would

include the same assets listed in the Disclosure Statements.  However, the net proceeds

from the collection and sale of property of the Estate available for distribution to

Creditors would be reduced by the commission payable to the Chapter 7 Trustee and the

Trustee's attorney's and accounting fees, as well as the administrative costs of the

Chapter 11 Estate (such as the compensation for Chapter 11 Professional Persons).

In a Chapter 7 case, the Chapter 7 Trustee would be entitled to seek a sliding scale

commission based upon the funds distributed by such trustee, even though the Debtor has

already accumulated much of the funds and the Estate has already incurred many of the

expenses associated with generating those funds.  Accordingly, there is a reasonable

likelihood that Creditors would "pay again" for the funds accumulated by the Debtor

because the Chapter 7 Trustee would be entitled to receive a commission in some amount

for all funds distributed from the Estate.  It is also anticipated that a Chapter 7 liquidation

would result in a significant delay in the payments to Creditors.  Among other things, a

Chapter 7 Case would trigger a new bar date for filing Claims that would be more than

ninety (90) days following conversion of the case to Chapter 7.  Fed. R. Bankr. P. 3002©.

Hence, a Chapter 7 liquidation would not only delay distribution but raise the prospect of

additional claims that were not asserted in the Chapter 11 Case.  Based on the foregoing,

the Plan provides an opportunity to bring the Greatest return to Creditors.

In addition, the Debtor is doubtful that a Chapter 7 Trustee would pursue the

Estate's equity in the real property resulting in the mortgage holder receiving the real

property in a cash bid foreclosure sale.

The Debtor believes that, if this Plan is not confirmed or is not confirmable, the

only likely alternative will be conversion of the Chapter 11 Case to a Chapter 7

liquidation.  The Debtor believes that the Plan is more likely to yield economic benefits

to unsecured creditors than a Chapter 7 liquidation because it will avoid a layer of

administrative expense associated with the appointment of a Chapter 7 Trustee, while

decreasing the efficiency of administrating the Debtor's assets for the benefit of their

Creditors.

## X.
## EFFECTIVE DATE

The Plan will become effective on or before the first business day following thirty

(30) days after the Confirmation Order becomes a Final Order.

## XI.
## MISCELLANEOUS PROVISIONS

A.    Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C. §1930, as determined by the Bankruptcy

Court at the hearing, pursuant to 11 U.S.C. §1128, shall be paid on or before the Effective

Date.

To the extent required by law, the Reorganized Debtor or other responsible party,

in this case, shall timely pay fees incurred post-petition pursuant to 28 U.S.C.

§1930(a)(6) until this case is closed, converted or dismissed, and the Reorganized Debtor or other responsible party shall file with the Court and serve on the U.S. Trustee a financial report, in a format prescribed and provided by the U.S. Trustee, for each quarter or portion thereof that the case remains open.

To the extent that any payment of pre-confirmation U.S. quarterly fees has not included payment for disbursements related to the operation of the Debtor, or any other of Debtor's assets and those disbursements are properly includible in the calculations of the Debtor's disbursements for the purpose of calculating the U.S. Trustee's quarterly fee, then said payment shall be recalculated (with due credit for any payment previously made) and paid on or before the Effective Date, provided however, that in no event shall more than the maximum fee due to the U.S. Trustee shall be paid.  Any past-due pre-confirmation U.S. Trustee quarterly fees shall be brought current by payment on or before Effective Date.

B.      Co-Debtor Stay

Upon the Effective Date of the Plan a permanent injunction shall be invoked to extend the provisions of 11 U.S.C. §524 to the co-debtors for the purpose of administering the estate.  It is in the best interest in the administration of the estate to protect the Trustees.  Their ability to contribute both time and money to the Debtor would be greatly diminished if they are required to defend collection actions in State Court.

**XII.**
**OTHER DETAILS**

A.      Headings of Articles and Sections

The headings of the Articles and Sections of this Plan are inserted for convenience only and shall neither constitute a part of the Plan nor in any way affect the interpretation of any provision of the Plan.

B.     Successors and Assigns

The rights, benefits, and obligations of any person or entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors or assigns of such person or entity.

## XIII.
## CONFIRMATION REQUEST

In the event that there is not a consensual Plan, the Debtor requests Confirmation of the Plan pursuant to 11 U.S.C. §1129(b).  In that event, the Debtor may modify this Plan to the extent that Confirmation of the plan pursuant to 11 U.S.C. §1129(b) requires such modification in a manner that does not require amendment of this Disclosure Statement and re-solicitation of acceptance or rejection of this Plan.  The Debtor reserves the right to modify the Plan in any manner that does not require re-solicitation.


Greater Praise Tabernacle COGIC

By:     /s/ David Johnson_____
        David Johnson - Pastor


        /s/ John E. Dunlap_____
        John E. Dunlap, Esq.
        1433 Poplar Ave.
        Memphis, TN  38104
        (901) 276-3334